May it please the Court, I'm Roy Liddell. I represent the appellants, Frank and Dorothy Merchant, in this appeal which arises from a dispute over title to farm acreage in Lake The threshold issue in the appeal, as we appreciate it, is whether or not in April of 2006, Billy Merchant effectively conveyed the farm property back to Frank and Dot Merchant, such that ten years later, in 2016, Billy Merchant, the appellee, one of the appellees, did not have title to the property to convey, and so Frank and Dot Merchant brought suit to quiet title to the property and to obtain title in themselves. Under Mississippi law, we believe the linchpin here is whether or not, and this is under the Benton v. Harkins case, whether or not there was unequivocal intent or an unequivocal delivery of the deed, and then whether there was proof of intent to deliver the deed. And as we read the law, we believe subjective intentions that are claimed as to conveyance or an intention regarding conveyance is not the dispositive inquiry. Instead, it's simply the objective criteria of delivery of the deed with a demonstrated intent to deliver that deed. And we believe that if the law were otherwise, no deed would be safe. Anyone could claim a subjective intention after the fact that was not consistent with what was handed in writing, physically delivered, with a demonstrated intent to deliver that deed. What do we make of the fact that it was notarized on a date certain, at least? We don't believe the fact that it was not formally dated with the signature undermines the efficacy of the deed. It certainly was notarized on a date certain and then delivered within days of that notarization. There's also evidence in the record that we believe firmly supports the appellant's position that there was a delivery of a deed. Billy Merchant admitted in the record he was conveying the property back to, those are his words, back to Frankendot, that's record 4102. He admitted he mailed the deed with an intent that they possess it. And we believe that's critical because that satisfies the second part of the inquiry in Benton v. Harkins as to whether there has been an effective deed of the property. Billy Merchant even testified that the purpose was, and he quoted essentially the deed. Billy Merchant, this is a quote, does sell, convey, and warrant to Frank Merchant and wife Dorothy Merchant the property. And then one of the more telling admissions in the record, this is at 4010, Billy admitted as of 2011, bear in mind this is five years after the deed in issue, quote, Dot had ownership of the property, Dot Merchant, Frank's wife, and she refused to let him farm that year. That was in response to a question by Billy Merchant's own attorney at trial as to why Frank Merchant didn't farm the property in the five years. And Frank and Dot possessed it, and they farmed it, and they paid taxes on it. And they did that through the date of 2016 when Billy conveyed it to his and Frank's cousin, George Harkins. And for clarity, I'll refer to the parties by first names to avoid confusion, not out of any lack of respect. As I said, the Benton v. Harkins case, we believe, is very significant. And just as the chancellor was reversed in that case for not recognizing delivery of a deed, so it is in this case. In the Supreme Court held there's no evidence or inference to be we have that in our case. And continuing, or that Harlow did not intend to deliver the deed to Benton. In that case, it was a situation where a parent, as I recall, conveyed the property to two children, and then a couple of weeks later, and the deed was delivered. And then two weeks later conveyed it to one of the children, and there was an effort by the child who thought she had been to recover title. And the court held she was right, because there had been a delivery of a deed to both of them. The second critical point here is that there is, contrary to the court's holding below, there was compelling evidence, I think irrefutable evidence, that Dot Merchant accepted the deed. When Billy Merchant sent it back to her, she placed it in a filing cabinet where it was kept for the duration until Billy purported to convey the property away. The Estate of Green v. Cooley case, we believe, is dispositive of that issue, and we believe the linchpin, for lack of a better word, on that issue has to do with control of the deed. If you read the Estate of Cooley v. Green case, the holding is if the grantee accepts control of the deed, acceptance is complete. Well, there's no evidence otherwise in this case that the deed was placed in a brown wood filing cabinet and kept. It was under the exclusive control of Frank and Dot. Billy Merchant admitted he never gained possession of the deed after that. The other critical point, and I think the district court agreed with the law but seemed to misapply it, is that regardless of the separate dispute having to do with whether or not George is a bona fide purchaser for value, the deed was effective as between Frank and Dot on one hand and Billy on the other, regardless of whether it was recorded. And I think the court was citing the failure to record in an effort to show that there was somehow no acceptance of the deed in light of the failure to record it. Well, the whole purpose of the transfer was to protect the property from Dot and Frank's creditors, wasn't it? Originally, that was right, Your Honor. So what happens with clean hands? With the clean hands doctrine? Your Honor, we believe the clean hands doctrine doesn't apply here mainly because Billy Merchant is using the defense as a shield to his own misconduct. And we believe the court erred. Well, what about your client's misconduct? I think their conduct in the case was that they were protecting it from creditors, but I don't think the record supports that they were unlawfully protecting it from creditors. The property had been pledged in connection with an FSA loan that was released in August of 2005, months before this transaction. So there was no, this property was not pledged at that time to protect any creditor and no creditors brought it at that time or at any other time. Well, to me, and I may be viewing it wrong, it all comes down to failure to file it publicly. Because it appears that as soon as it was filed, creditors came out and said, whoa, hey, you've got property we didn't know about. Is that correct? I don't believe so, Your Honor. I don't believe creditors came out because there weren't any. There were no creditors with liens on the property. We're not aware of any creditor that came forward that would have had a lien on the property. And in the descriptions of the property confirm that there was a release that was well before the transaction. The other thing I would like to... Well, they may not have had a lien on it, but it's value that creditors... Maybe I misread something. Well, we're not aware of creditors who existed at the time of the transaction. And our position is you're... But it wasn't recorded all of those years. That's right. To protect it from creditors. I mean, because once it's recorded, they can start to say, okay, you've got non-exempt property that we... If there were creditors out there who could do that. But there's no evidence that there were. And no evidence came forward. Well, but your clients at the time were essentially broke, weren't they? They were having financial difficulties, but their difficulties... So it was just a matter of time before creditors would come looking for assets, and this would be one of the principal ones, if not the only asset. I don't believe that's accurate, Your Honor. I don't think the record supports that at all, because if there weren't any creditors, we're not aware of any having come forward. There's no evidence of other creditors who had a lien on the property or asserted a lien on that particular... That's because the title was no longer in your client's name. I understand that as a matter of public reporting, that's the case. Our position on that issue, though, is that the clean hands doctrine in this case is being used to disregard a transaction that was completed a decade before the transaction in issue in 2016. And we think the most important factor in the application of that doctrine is that while the clean hands defense can generally operate, and the court has some discretion, obviously, to apply the doctrine to the facts of a case, in this case, there was such clear evidence of wrongdoing of Billy Merchant. Bear in mind, he testified that he thought he had a right to sell the property because he had a lien on the property, which he didn't have, and he agreed it was never pledged as collateral. And he told George Harkins he was selling it because Frank and Dot owed him money. And this property was never pledged as that collateral, so he took the $96,000 in proceeds, admitted that he only owed them $18,000, and he kept the entire balance. And in that situation, he clearly abused them, converted the proceeds of the sale, did it intentionally, left them with nothing, and this all happened 10 years after a transaction that had been completed. In other words, to apply the doctrine in this circumstance would mean to say if Frank and Dot conducted an errant transaction that had some recognized problem, they forever lost the right to protect their property? I don't think so. I think the doctrine is one of equity, and I think if you read the Mississippi cases that focus on the conduct of the person who orchestrated what happened in 2016, that's Billy Merchant, his conduct precludes him from asserting the defense. He's the one seeking to avail himself of the benefit of that defense, and his conduct precludes that. And we believe the lower court abused its discretion in ignoring Billy Merchant's conduct in the transaction. We also, to the extent it—well, let me address briefly the bona fide purchase for good faith for value. Frank and Dot had possession of the property. George Harkins, the record demonstrates, had clear inquiry notice of issues regarding ownership of the property. He even admitted he had, quote, hearsay knowledge having to do with there being concerns that Billy was trying to displace Frank and Dot in terms of their ownership of the property. The case is cited by George Harkins on this case that if you possess property but then you give a deed that's recorded, you can't deny that person bona fide purchaser status. It's not applicable because George's knowledge was much broader than just the possession of the property, and under those circumstances, he clearly failed to qualify as a good faith purchaser for the property. There were conversations. George admitted he knew Frank was upset at Billy about Billy asserting that the property was his, and this occurred three or four years before Billy conveyed, if I recall, conveyed the property to George. And when I asked George about this at Frank being upset, George admitted that Billy told him that Billy was relying on a right to retain or foreclose on the property and sell it if Frank and Dot did not repay the loan, and that, of course, would have excited anyone to ask more questions. My time is up. Thank you. I'm Paul Rogers, along with my co-counsel Mary White, represent the appellee Billy Harkins, I mean Billy Merchant. I will address the issues related to the delivery and acceptance of the deed. Mr. Hembree will deal with the bona fide purchaser for value issues in his presentation. There is no question that as of January the 5th, 2006, when Billy Merchant received the deed from Frank and Dot Merchant, that he became the fee simple owner of record of the subject property, plus this additional parcel. Nobody's mentioned the additional parcel, but the deed had a fourth parcel in it that was inadvertently included in the transfer in 06. It was also in the undated deed, and that particular parcel was Mr. and Ms. Merchant's home place. Apparently in December of 06, they became aware that that parcel had been included that was not intended to be included, and he readily reconveyed that to them. They recorded their deed, putting it back into their name. All of the actions of the Merchants and the parties after January 5th, 06 clearly indicated that everybody believed that Billy Merchant was then the owner of the property. There was nothing inconsistent with that. The case law of Mississippi says that you look at the words, actions, etc., of the parties surrounding the deed to determine what was intended, and there is a document in the record that sort of clears it. It says it's ROA 3356. It is an email from the FSA Carthage, the County Executive Director of the Leek County Farm Service Agency, to Mr. Billy Merchant dated August 16, 2013, and in it, it states, Mr. Billy, the Leek County FSA office was informed by Frank, Dot, and Michael that Michael is conducting the farming operation for the 2013 crop year and that you and he, Perrin Michael, are the owners of the land. So, in 2013, they were still saying that Billy Merchant was the owner of the land. Obviously, the appellants recognized that there has to have been something that happened after January 5th, 2006, that changed that ownership. The only thing they can point to is the D8, what they referred to as the found deed, or no, I'm sorry, P2, the found deed that is undated, as Your Honor pointed out, and that is notarized. It included, I think, the tract 4 was the home place. They gave that back, but the only thing they point to that gives them title back is this deed that was undated and was notarized after the fact. The notarization issue is really irrelevant to the court's determination because, as between the parties, it would be effective if it were a valid deed. Let me ask you this. Where would we be had the deed been properly recorded? We, and I had the same question, Your Honor. We would not be here. We would be somewhere else today. If that deed, if it had been, you know, if it had truly been we wouldn't have this case. Why? Because we might have had a different case, but we wouldn't have this one. I understand. Yeah, I mean, we would have had a, you know, if that had been the case and when Mr., I mean, I have an almost identical case where the lady found out many years after the fact that the deed had not been recorded that the other person still owned the property and we filed suit to impose a constructive trust. I meant this case. Right, but that's where we would be. What would the legal theory be? The legal theory for Billy or Frank and Dorothy. Anybody, just tell me what you think, where we would be if it had been recorded promptly. I think that Billy Merchant would have sued Frank and Dorothy for a constructive trust and he come up continuing to think he owned the property and got ready to sell it and couldn't sell it because he didn't own it. He would have had to have sued in Chancery Court to impose a constructive trust. Is there Mississippi law that says recording is part of delivery or? No, I don't believe there, I don't believe, certainly recording would be the clearest evidence of delivery and acceptance, but not having that, I don't, I don't believe that we, the, but something had to happen to change Billy Merchant's ownership. It was either this deed or the equitable powers of the court that they sought to invoke to compel reconveyance of the property and the district court exercised its discretion and in that discretion determined that the clean hands theory barred that relief. The, the appellate points to the alleged wrongdoing of Mr. Merchant. That's what I want to get, that's what I'm trying to hone in. Had it been recorded, why, that would bar the clean hands theory? Had it been recorded, you know, they still could have have used it again, you know, in trial they could have said that they were not authorized to convey this, to record this deed and by doing so they have unclean hands. It wouldn't have been, I don't know it would have been as clear as the conveyance to avoid creditors, which under the Elsie versus James case is pretty much red letter law, black letter law of Mississippi that says that if you convey property to avoid creditors you have unclean hands and can't use the powers of the chance report to bring it back. You know, the, the recording of the, the found deed when it, when it ultimately was found, it's obvious that they didn't know about it until after the fact because they filed a their original complaint filed to start the case, which is under oath, states that they do not own the property and that they have demanded of Billy many times to reconvey legal title to the property to them, but Billy has failed to do so and they filed that under oath. So it's, you know, it's, it's difficult for them to take a, an alternative contrary position on this appeal. You said earlier that we wouldn't have this case if Billy, well, had the deed been recorded and so we wouldn't be here, at least in this case, had the deed been promptly and properly recorded. So does that mean that you concede Billy had the when he sent that deed back to, to Ms. Merchant? That deed is actually a mirror deed to D8, which is the unrecorded deed from Frank and Dot to Billy of the property that was dated December 19th and never recorded. It is the other side of that transaction. For whatever reason, they didn't conclude that transaction. They did it several months later. One more question. Is it your view that the unclean hands doctrine bars every type of relief, both legal and equitable? Well, no. If they had a, if they had a valid legal claim, for example, they, they allege conversion. That is a legal claim. That is not an equitable claim and I don't believe unclean hands would, would bar that if they had that cause of action point of, of, of reference. You can't convert real property. You can only convert personal property. So that's, that's couldn't have been in the LeBar case. That was converting money, not the property. That's my, what is it about the unclean hands doctrine that lets them prevail because the deed wasn't properly recorded, but you say we wouldn't have, they couldn't, it's a different case had they recorded it. That's what I'm getting at. I mean, I don't, what legal principle in your mind makes that the result? Well, it just would have been a different, it would have been a different case. Why, why wouldn't unclean hands doctrine apply? It would apply in that case. I mean, they could have, they could have, it could have been applied theoretically if that case were filed. If the deed, if the found deed had been recorded at the time, putting the title into back to Frank and Dorothy and everybody proceeded forward not knowing that, unaware of that, and then Billy Merchant tries to sell it and can't, he could allege unclean hands against them in that transaction as a, as a remedy. So you're saying unclean hands would apply even had they properly filed the deed? I thought you said a minute ago it would not. That's what I was. I believe that if I'd filed the case, it would apply. I would, I'd have to use that as a, you know, unclean hands, give us a constructive trust, and put the land back to Billy. Thank you. May it please the court. My name is Dewey Hembree and I'm here this morning representing George Harkins. I've had the advantage, I guess, of sitting at table and hearing some of the questions, and I think I have an answer at least for some of the questions posed by the court earlier. There was a question about notice to creditors and was there a conveyance that triggered one of the creditors to act, and the answer is yes. It was in the court's opinion, page 3480, talking about the home place deed that was discussed earlier. The deed was recorded almost 11 months later, in December of 06. In 07, the United States of America, acting on behalf of the SFJ, filed suit against Franken and Dot Merchant, and they allege in their complaint, and this is in the court's opinion, that the United States has discovered a certain asset, 0.43 acres with a dwelling in Carthage, Mississippi, owned by the defendants, Dot Merchant, which has a value of some $43,000, which would satisfy a debt they owed. So that's what triggered the United States, who had apparently some sort of debtor-creditor relationship with the merchants, to file that suit. So the conveyance of that fourth parcel that was on the, quote, found deed did trigger that. The second question that was asked involved the recording of deeds and what impact that had on delivery, and the court, the district court, cited a Mississippi case, Morrow, I believe it was, on page 3504 of the record, and in that particular case, they discussed the fact that recording of a deed does create a rebuttable presumption of delivery. So there is some correlation between delivery and recording in Mississippi law, and that was discussed by the court in the lower case. My client involvement in this case obviously occurs near the end of the story and not at the beginning, so I'm going to try to focus real quickly on his involvement. The main issue, I think, raised by Frank and Dot Merchant against George Harkins for the appeal concerns notice, and Dot and Frank challenged the fact that George is a bona fide purchaser for value consideration without any notice of the adverse claims. The district court specifically found that George had no prior actual knowledge of any ownership claims of Frank and Dot at the time he purchased the property. The court noted that neither George nor Frank or Dot nor Billy were aware of the found deed at the time of the transaction. In the opinion, the district court cited Mississippi Code annotated section 89-5-1 and observed Mississippi as what's called a race notice state, which means that the courts grant priority to people who record their deeds first, but only if notice of any prior unrecorded claims. As I mentioned, there was no found deed at the time of the transaction, so no one had notice of such a claim when the deal closed. So what sort of claims did Frank and Dot have to the property that could have been knowledge or imposed to my client? I mean, were they engaged in estate planning? We don't know. There was some talk of a conveyance to a son. Were they hiding assets? That was discussed earlier. I mean, it's really unclear what claims Frank and Dot had to the property at the time my client bought the land. Now, true enough, as counsel pointed out, my client did testify that he was aware of Frank's prior ownership of at least some of the parcels involved, and he was also aware that Frank at one had farmed at least one or two of the three parcels. It's important to note that my client is a resident of Maryland. He does have knowledge of the area in question, but he was limited in his observations just, I guess, on his visits to Mississippi. The court found that George's knowledge of Frank's farming of some of the land was enough to give George constructive notice of possible claim. However, the court also discussed the level of inquiry which was conducted by George. The court noted that Billy Merchant explained that he had bought the property in 2006 and noted that Billy allowed Frank to farm the land. The court also noted that the record is very clear that George didn't just accept Billy Merchant's claim of ownership without conducting an independent verification of the facts. In fact, the day Billy told George that he owned the property, George asked an attorney to check the ownership records in Leek County, and she provided George with information about a conveyance from Frank and Dot to Billy in 2006. Later, George hired a second attorney to check title to the property, and we think that his conduct was very reasonable and really represents the typical level of inquiry conducted by most people when they purchase real property. Now, in our brief, we do discuss the point that Council alluded to earlier that Mississippi law does hold that continued possession of land by a grantor of a deed does not typically impose constructive notice upon a third party that's relying in good faiths on the deed of the grantor. This is the rule from the Hafter v. Strange case. Now, Council earlier noted that there was a statement made at some point by Frank in the presence of my client that says, Frank says there's going to be a killing if he doesn't get his property back. Now, this was made at another court proceeding at some time well before the purchase of the property. Interestingly, Frank does not remember making the statement. Frank also said that if he did make such a threat to kill his brother, he didn't mean it. Like I said, my client testified that he recalled hearing the statement, but he didn't take the statement seriously either. Now, keep in mind that at the time the statement was made, there was no agreement to purchase this property. In fact, my client didn't even know what property the statement was about. He had to ask Billy after that what property was this guy talking about, and Billy told him at this point that that's what, you know, the property he had purchased from Frank in 2006. There really there's no testimony as to why the statement was made. I think you can break the statement down into two parts. There's going to be a killing, obviously, is the first part. I don't think anyone took that part seriously. And the second part, if I don't get my property back, back being, I think, a key word. Based on this language, I think the district court found that George did not construe the statement to mean that Frank owned the property. If Frank owned it, why would he want it back? As such, the judge did not find that the statement was enough to place George on constructive notice of any claim of current ownership by Frank. I think the gist of the court's opinion is that George had no notice of adverse claims of Frank and Dot, and that George's level of inquiry as to the ownership of the property was sufficient. Well, clarify one thing. The clean hands doctrine only applies in the alternative of an equitable claim. Is that right? It does not affect the legal claim on the basis of the public records. That is my understanding, Your Honor. I think that's correct, and I believe counsel did cite some authority to that in the briefs. I think, from my class perspective, though, it's important to note that the district court found that the sale of the subject property depicted an arms-linked transaction between Billy and George for a fair amount of consideration. I think the evidence backs this up. I think, obviously, the credibility of the witnesses played a key role in the decision. The case consisted of a five-day bench trial, and the judge listened to a ton of witnesses and reviewed many exhibits in reaching his conclusions. I think one critical fact that was not missed by the judge is the fact that Dot Merchant is the chantry clerk of Leek County, Mississippi. It's extremely unusual to have a case involving the recording of instruments where one of the parties is the recorder of the instruments. If anybody knew the importance of recording a deed, it was the chantry clerk. If she truly believed that she and Frank owned this property, what possible reason could she have for not recording the deed? It makes no sense. In Mississippi, if you want to make certain that you own real property, the law requires you to record your deed. The reason for the law is to prevent situations whereby more than one person may claim ownership of real property. Frank and Dot Merchant had the ability to avoid all of the problems in this case if they'd only acted reasonably and openly. Had they never entered into such a mixed-up process, my client would never have purchased this property. He would have checked title and found that Frank owned it, and he wouldn't have done the deal. George acted reasonably, and he conducted his affairs in a businesslike manner. As such, the district court found that he was the rightful owner of the subject property, and we believe this court should affirm that decision. Thank you. May it please the court. I'd like to focus specifically on the legal claims that Frank and Dot have against Billy that we believe the lower court improperly dismissed. There are claims for both conversion and breach of fiduciary duty. The breach of fiduciary duty or the existence of a fiduciary duty or relationship, I should say, was expressly found by the district court. So he agreed that at least as between Frank and Dot on one hand and Billy on the other, there was a fiduciary relationship. On the record before the court, what occurred in the context of that relationship was that Billy took property that had been, even if you assume it had been conveyed to him and he didn't convey it back with no consideration, he later told George Harkins, and George Harkins' testimony supported this, and I don't think it's disputed, that he was selling the property because of money he claimed was owed. Even though he admitted that he held no deed of trust, there was no note, there was no basis other than there had been a loan separately collateralized that still had an $18,000 balance on it. Billy proceeded to sell the property to his cousin, and there were texts between them joking about it after the fact, and kept $96,000 with an admission that only $18,000 was owed. That was from Billy's own mouth at trial. Dot said it was $16,000, he said it was $18,000, but even if you give Billy the benefit of the doubt on that, he basically stole the $78,000 balance, and perhaps more if you believe the unchallenged expert testimony that valued the property at $120,000. Even if there were some issue with clean hands, and we don't believe it is because we believe Mississippi law is clear, you look at the asserting the defense to determine whether it is available to them, and Billy Merchant fails that test under Mississippi law because of his misconduct, but even if you set that aside, and don't agree with that, Billy breached his fiduciary duty to Frank and Dot by pocketing the balance of the proceeds, and they were financially significantly damaged by that conduct. The next thing I wanted to address briefly is that it's true recording is related to a finding of delivery to the extent under the law it creates a rebuttable presumption of delivery. That's true, but it's not true that the absence of recording creates an inference one way or the other, and in fact, the law is just crystal clear. The district court even cited it. It just didn't follow it that the failure to record doesn't affect the efficacy of the deed between the grantor and the grantee, and that's just the law. There's no erosion of that principle. What about the efficacy of the transaction between the grantee and Harkins? I don't think it affects the transaction between the grantee and Harkins. I think that issue goes off on whether or not George Harkins had notice, and we believe, in other words, just because the transaction is effective as to putting Frank and Dot on one hand and Billy on the other, that doesn't mean it's also effective as to Mr. Harkins, George. That issue goes off on whether or not he had notice. What about the converse? If it's not effective between Dot and Billy, but what does it affect the transaction between Billy and Harkins? Well, my understanding is if there was a finding that the deed was not effective as between Billy conveying it back to Frank and Dot, I don't believe there would be an issue with Billy. In other words, if he still held title, he could convey it freely to George. Of course, we think that's not the case because Billy clearly delivered the deed and under Mississippi law for conveyance of a deed. The other thing, briefly, there was a mention that there was inconsistency between the original complaint and the amended complaint. Frank and Dot obtained new counsel. The deed was found, and that was the reason the complaint was amended and the court held that they were not judicially estopped. The district court, we believe, was correct on that point because the new information did not support application of judicial estoppel. There was nothing wrong with filing an amended complaint that took into account finding the deed. Thank you.